UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LIDIE MICHEL,

        Plaintiff,

v.                                  Case No.  8:24-cv-0055-TPB-SPF

MARTIN O'MALLEY,
Commissioner of the Social
Security Administration,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the denial of her claim for period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI").  As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed the proper legal standards, the undersigned recommends the Commissioner's decision be affirmed.

### I.    Procedural Background

Plaintiff applied for a period of disability, DIB, and SSI (Tr. 266-81).   The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 70-99).   Plaintiff then requested an administrative hearing (Tr. 166-67).   Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 21-50).  Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 103-24).  Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied

(Tr. 8-13).  Plaintiff then timely filed a complaint with this Court (Doc. 1).  The case is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.        Factual Background and the ALJ's Decision

Plaintiff was born in 1971 and claims disability beginning November 28, 2019 (Tr. 105, 122).  She has a high school education and some college credits and previously worked as a Walmart sales clerk, a certified nurse's assistant, and a vocational trainer (Tr. 121).  Plaintiff alleged disability due to fibromyalgia, osteoarthritis, back and neck problems, allergies, and acid reflux (*see* Tr. 72).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022, and had not engaged in substantial gainful activity since November 28, 2019, her alleged onset date (Tr. 105).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: cervical radiculopathy, tendinopathy, right acromioclavicular joint osteoarthritis, obesity, hypertension, hyperthyroidism, and anxiety (Tr. 106).  Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id.*).

The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with these limitations:

> [S]he is further limited to requiring an option to change positions from sitting or standing.  In addition, the claimant can frequently climb ramps, stairs, ladders, ropes, or scaffolds; and can frequently balance, stoop, kneel, crouch, or crawl.  Furthermore, the claimant can frequently reach.  The claimant can also only understand, remember, and carry out simple instructions; can maintain attention,

2

> concentration, and pace in increments of two hours out of an eight-hour workday; changes in the workplace are occasional and gradually introduced. Additionally, the claimant can have occasional interaction with co-workers, supervisors, or the general public.

(Tr. 110). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (*Id.*).

Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform her past relevant work but could work as a marker, router, or small products assembler, all light and unskilled jobs (Tr. 123). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (*Id.*).

### III.    Legal Standard

To receive benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity because of any medically determinable physical or mental impairment that will likely result in death or that has lasted or will likely last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations in effect. These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy given his or her age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. Review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### IV.        Analysis

Plaintiff raises four arguments on appeal: (1) the ALJ should have classified Plaintiff's knee impairments as severe at step two of the sequential evaluation process; (2) the ALJ did not consider limitations related to these knee impairments in formulating Plaintiff's RFC; (3) the ALJ erred in evaluating the medical opinion evidence; and (4) the ALJ improperly considered Plaintiff's subjective complaints (*see* Docs. 13, 15).[1] All told, Plaintiff argues the ALJ's decision is not supported by substantial evidence. The Commissioner contends the opposite (Doc. 14). After reviewing the parties' briefs and the administrative record, the Court recommends that the Commissioner's decision be affirmed.

---

[1] Plaintiff divides her argument into three issues rather than four. But her first issue, framed as "Did the ALJ properly consider Michel's knee impairment at Step Two and beyond?" (Doc. 13 at 5), is two rolled into one: Plaintiff challenges the ALJ's step two analysis *and* questions whether the ALJ considered the limitations from all her impairments – both severe and non-severe – in formulating her RFC.

## A. Step Two

Plaintiff's first argument is that the ALJ erred at step two because, despite acknowledging Plaintiff's complaints of knee pain and her medical treatment for the condition, she excluded knee issues from the list of Plaintiff's severe impairments (*see* Doc. 13 at 9; Tr. 106).  The Commissioner responds that the finding of any severe impairment is enough to satisfy step two (Doc. 14 at 7).  For the reasons explained below, the Court agrees with the Commissioner.

At step two, the ALJ must consider the medical severity of a claimant's impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is not considered severe where it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522(a), 416.922(a).  To establish a severe impairment, the claimant must only show that the "impairment is not so slight and its effect is not so minimal." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019).  If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the next step.

Additionally, if an ALJ errs in finding that a particular impairment is not severe at step two, such error is harmless *if* the ALJ finds that the claimant has at least one severe impairment.  *Schink*, 935 F.3d at 1268; *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823,

824–25 (11th Cir. 2010)[2] ("Even if the ALJ erred in not indicating whether chronic pain syndrome was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment, and that finding is all that step two requires."); *see also Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("Accordingly, even assuming that [the plaintiff] is correct that her additional impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."). To the extent Plaintiff seeks remand because the ALJ's failed to classify her knee impairments as severe, any such error is harmless. The ALJ found that Plaintiff had other severe impairments and properly proceeded to step three of the sequential analysis (Tr. 106).

## B. RFC

Piggybacking on her first argument, Plaintiff argues the ALJ erred by failing to include functional limitations related to her knee impairments in the RFC determination (Doc. 13 at 13-15). The Commissioner counters that Plaintiff is asking the Court to reweigh the evidence and substitute its judgment for that of the ALJ, which is not the Court's role. The Court agrees with the Commissioner.

A claimant's RFC assesses her maximum ability to do work despite her impairments. It is a formulation reserved for the ALJ, not a claimant's treating or consultative physician. *See* 20 C.F.R. § 404.1546(c). And the ALJ, of course, must support his or her findings with substantial evidence. *See Beegle v. Comm'r of Soc. Sec.*

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

*Admin.*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 926 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor"). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; the ALJ cannot point to evidence that supports the decision but disregard other contrary evidence).

Here, in assessing Plaintiff's RFC, the ALJ discussed Plaintiff's allegations of knee pain and the functional limitations of her knee impairments.[3] (*See, e.g.*, Tr. 106 (stating that Plaintiff had "a slight tear of the meniscus"); Tr. 111 (noting that Plaintiff alleged "osteoarthritis in the shoulder and knee" and "an unrepaired left knee meniscus tear"); *Id.* (Plaintiff complained of constant left knee pain exacerbated by surgery in February 2022 and right knee pain due to overcompensation); Tr. 112 ("In January of 2019, the claimant presented with complaints of left knee pain over the past several months with chronic aching throughout the day."); Tr. 113 (In June 2022, Plaintiff had "decreased 4/5 right knee and foot strength."); *Id.* (in January 2019, Plaintiff reported persistent left knee pain

---

[3] The ALJ also stated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, both singly and in combination when assessing her ability to perform basic work-related activities." (Tr. 106). This statement is sufficient to establish that the ALJ adequately considered all of Plaintiff's impairments. *See Heatly*, 382 F. App'x at 825 n.3 (ALJ's statements that he considered "the entire record" and "all symptoms" indicate he considered all of claimant's impairments); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings); *Wilson*, 284 F.3d at 1224–25.

and showed "some medial joint line soreness and mild McMurray's exam discomfort. . . . The claimant was diagnosed with left knee pain and treated with conservative medication. However, a follow-up series of bilateral knee x-rays showed tiny right knee patellofemoral osteophytes, with no significant abnormalities identified."); Tr. 114 (after left knee arthroscopic surgery, Plaintiff followed up in March 2022 with prescribed physical therapy and "conservative medications[.]" Her pain increased in April 2022, and she reported using a walker. In September 2022, a left knee MRI "showed intact cruciate and collateral ligaments, but also a small effusion and slight tearing of the posterior horn of the medial meniscus (B13F/7). The claimant was treated with adjustment to her oxycodone and Tylenol 4 medications."); Tr. 115 (Plaintiff had "arthroscopic surgery on the left knee in February of 2022 and was referred to physical therapy in August 2022. She was diagnosed with pes anserinus bursitis of the left knee and hip pain. She continued to present with reports of left knee pain[.]"); Tr. 117 (Plaintiff had worsening left knee pain in March 2023. Bilateral knee X-rays showed mild to moderate degenerative joint disease. "The claimant was treated with referrals for further study and discharged home with adjustment to her conservative medications.")).

Plaintiff suggests that her treatment for knee pain and diagnosis of a meniscal tear in her left knee requires the ALJ to incorporate related limitations into her RFC (Doc. 13 at 12). But the existence of an impairment does not reveal the extent to which that impairment impacts a claimant's ability to work. *See, e.g.*, *Thomas v. Comm'r of Soc. Sec.*, No. 3:19-cv-943-J-PDB, 2020 WL 5810234, at *3 (M.D. Fla. Sept. 30, 2020) ("The mere existence of an impairment does not reveal its effect on a claimant's ability to work or

undermine RFC findings.") (quotations and citations omitted); *see also Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987) (stating that the functional limitations imposed by a condition, rather than the mere diagnosis of the condition, determines disability).

When formulating Plaintiff's RFC, the ALJ assessed the evidence of Plaintiff's knee impairments and her allegations of knee pain and determined that she is capable of light work with "an option to change positions from sitting or standing[,]" among other limitations (Tr. 110). To Plaintiff, this RFC determination is improper because record evidence could support a different, more restrictive one. But this is outside the scope of judicial review. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our own judgment for that [of the Commissioner]' . . . ."). As explained below, substantial evidence supports the ALJ's weighing of Plaintiff's medical source opinions, and Plaintiff's RFC argument fails.

## C. Opinion Evaluation

This dovetails into Plaintiff's next argument. Three of Plaintiff's physicians completed physical RFC assessments at her request and opined that Plaintiff had knee pain and could not stand and walk more than one hour during a workday: Neurologist Hind Kettani, M.D. (Tr. 1067-68), pain management specialist Jose De la Torre, M.D. (Tr. 1071-72), and internist Ramzi Zureikat, M.D. (Tr. 1074-75) each treated Plaintiff and authored RFC assessments within one month of each other. Plaintiff argues that the ALJ

erred in concluding that the administrative finding of state agency medical consultant Roland Gutierrez, M.D. was persuasive while the RFC findings of Drs. Kettani, De la Torre, and Zureikat were not (*see* Tr. 119-20). The Commissioner responds that the ALJ properly weighed the medical evidence and properly followed the regulations in articulating how she did so. The Court finds that the ALJ's evaluation of Plaintiff's medical sources is supported by substantial evidence.

To backtrack, pre-March 27, 2017, Social Security Administration ("SSA") regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c). The treating physician rule became a staple of social security law, and under it, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

In this case, however, revised SSA regulations (effective on March 27, 2017) apply, because Plaintiff filed her claims in June 2021 (*see* Tr. 103). As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017);

*see also Schink*, 935 F.3d at 1259 n.4; *compare* §§ 404.1527(c), 416.927(c) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). The Eleventh Circuit has affirmed that these new regulations eliminated the long-standing treating physician rule. *Harner v. Comm'r of Soc. Sec.*, 38 F.4d 892, 897 (11th Cir. 2022) (noting that the Commissioner "determined that a change was required due to a shift away from physicians having a personal relationship with claimants and toward claimants consulting multiple doctors and care teams").

The current regulations require an ALJ to apply the same factors when considering opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4 n.2 (D.S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). Put differently, the ALJ must analyze whether a medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[4] 20 C.F.R. §

---

[4] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

404.1520c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. § 404.1520c(b)(1).

In November 2021, Kerri Aaron, M.D., a state agency medical consultant, concluded at the initial level that "there was insufficient evidence to make a comprehensive assessment regarding claimant's functional status." (Tr. 79). Dr. Aaron noted that a list of Plaintiff's activities of daily living ("ADLs") and an "exam addressing quantitative ROM as well as remaining allegations are required for adequate assessment." (*Id*.). The agency had sent Plaintiff ADL forms in June 2021, but she did not return them. When an agency representative followed up in November 2021, Plaintiff requested that the Commissioner make "a decision with the information currently in the file." (Tr. 78).

Meanwhile, the Commissioner authorized Plaintiff's consultative physical evaluation, which took place in December 2022 (Tr. 1043-49). Dr. Charles Lebowitz, M.D. examined Plaintiff and asked about her medical history and complaints of pain. He did not have access to Plaintiff's medical records ("Chronic pain in her knees. There are no medical records, labs, X-rays for me to review for this report.") (Tr. 1045). Plaintiff talked about her osteoarthritis of the knees, right shoulder pain, hypertension, and anemia (Tr. 1043). Dr. Lebowitz recorded that Plaintiff had decreased muscle strength in both legs and a 50% range of motion in both knees (Tr. 1045-48). He observed that Plaintiff "can walk without any assistive device. She limps on both legs due to osteoarthritis of the knees." (Tr. 1044).

Later that month, state agency medical consultant Dr. Gutierrez reviewed Dr.
Lebowitz's report – along with other evidence – and completed a physical RFC assessment
at the reconsideration level.  Dr. Gutierrez opined that Plaintiff was capable of light work
except she can frequently climb ramps or stairs and occasionally stoop, kneel, crouch,
crawl, and climb ladders, ropes, and scaffolds (Tr. 89-90).  Plaintiff could stand and/or
walk with normal breaks for a total of about six hours in an eight-hour workday and could
sit with normal breaks for a total of about six hours in an eight-hour workday (Tr. 89).
Dr. Gutierrez explained:

> Evidence of record indicates allegations of fibromyalgia, osteoarthritis
> of the shoulder and knee, back and neck problems, allergies, acid reflux
> and sleep issue due to pain.  Claimant admits being able to perform self-
> care, drive, shop.  Imaging shows minimal to mild changes.  PE notes
> gait antalgic without the medical need for a hand-held assistive device.
> Decreased ROM at the R shoulder, hips and R knee. Lungs clear.  Heart
> exam normal.  Essentially normal strength, reflexes, sensation, find and
> gross manipulation and ROM otherwise.

(*Id*.).

Enter Drs. Kettani, De la Torre, and Zuriekat.  Dr. Kattani is a neurologist who
treated Plaintiff from December 2022 (the same month of Dr. Lebowitz's consultative
exam and Dr. Gutierrez's RFC finding) through February 2023 for chronic myofascial
pain (Tr. 1142).  She managed Plaintiff's medications and referred her to physical therapy
and nerve conduction testing (it appears Plaintiff did not act on these recommendations)
(*Id*.).  During a February 28, 2023 appointment, Dr. Kattani observed that Plaintiff had
an antalgic gait but walked independently, had full range of motion in both knees, ankles,
and hips, and was able to rise from a chair without assistance (Tr. 1111-13)  Yet in her
RFC assessment of the same date, Dr. Kattani wrote that Plaintiff could walk only one-

half of a block without resting and could not sit or stand for any length of time (Tr. 1067). She opined that Plaintiff would need unscheduled breaks every workday that varied in length based on her pain level and could never lift or carry any weight. Plaintiff could manipulate her hands, fingers, and arms for 80% of a workday. Dr. Kettani listed Plaintiff's impairments as cervical and lumbar radiculopathy, chronic myofascial pain, panic attacks, chronic pain, and fibromyalgia (there is no record evidence of trigger point testing) (Tr. 1067) and advised her to follow up in six months (*see* Tr. 1123).

The plaintiff was treated by pain management specialist Dr. De la Torre for neck, shoulder, bilateral knee, and lower back pain from December 2022 through March 2023. In December 2022, Plaintiff described her pain as a worsening "constant severe aching pain with a burning-like and shooting sensation going down the right leg." (Tr. 1062). Activity aggravated her pain, resting and medication sometimes helped alleviate it, and sleeping and walking were difficult. Dr. De la Torre prescribed injections of a non-cortisone anti-inflammatory medication for both knees and adjusted Plaintiff's Tramadol and Cyclobenzaprine dosages (*Id*.). In March 2023, Dr. De la Torre observed that Plaintiff had a normal gait, walked without an assistive device, and had limited ROM in both knees but adequate muscle strength (Tr. 1064-65).

On March 10, 2023, Dr. De la Torre completed an RFC assessment (Tr. 1071). He noted Plaintiff suffered from neck, lower back, and bilateral knee pain, lumbar disc degeneration, lumbar radiculopathy, and joint pain that was severe enough to frequently interfere with the attention required to work. He said Plaintiff could not stand or walk for any length of time during a workday and could sit for only 30 to 45 minutes without severe

neck and back pain (*Id*.).  Every 20 minutes, Plaintiff would need an unscheduled break

lasting up to an hour.  She could never lift and carry 10 pounds or more and occasionally

lift up to 10 pounds (*Id*.).  She experienced extreme limitations on reaching, handling, and

fingering – she could perform these tasks only between five and 10% of a workday (*Id*.).

Overall, Dr. De la Torre opined that Plaintiff's pain is constant and unpredictable, and

her impairments were consistent with the functional limitations he assessed (Tr. 1072).

Dr. Zuriekat was Plaintiff's primary care doctor from February 2022 through April

2023 and wrote three To Whom It May Concern notes that Plaintiff cannot work (Tr.

1187-88, 1197).  Plaintiff met with Dr. Zuriekat in March 2022 after having arthroscopic

surgery on her left knee (Tr. 1196).  She recovered well at first but was using a walker at

her April 2022 appointment, telling Dr. Zuriekat that her left knee "feels worse than before

surgery" (Tr. 1197).  Plaintiff did not mention knee pain at her May 2022 appointment,

but in September 2022, she complained of pain in her left leg when standing (*Id*.).

On March 24, 2023, Dr. Zuriekat observed that Plaintiff had a normal range of

motion and was in no acute distress (Tr. 1204-05).   He referred Plaintiff to an

endocrinologist for hyperthyroidism (*Id*.).   That same day, Dr. Zureikat filled out a

physical RFC form, assessing Plaintiff with left knee pain, hyperthyroidism, fibromyalgia

(without trigger point testing), cervical radiculopathy, anxiety, depression, and panic

attacks (Tr. 1074).  He opined that Plaintiff could walk between 50 to 100 feet without

rest, sit for one hour at a time during a workday, and stand for one hour at a time.  She

frequently would need unscheduled breaks lasting up to an hour (*Id*.).  She occasionally

could lift and carry up to 10 pounds, but never more.  Plaintiff had no manipulative

limitations and could use her hands, fingers, and arms 100% of a workday (*Id.*).  Dr. Zuriekat cautioned that Plaintiff's impairments "are much worse than can be explained by the questions on your form.  Need her to remain off work until further notice." (Tr. 1075).

The ALJ analyzed Drs. Gutierrez, Kettani, De la Torre, and Zuriekat's RFC assessments in four back-to-back paragraphs (Tr. 119-20).  To the ALJ, Gutierrez's opinion stood out as "supported by and consistent with the detailed longitudinal record" and "persuasive overall." (Tr. 119).  The ALJ stated:

> Dr. Gutierrez reviewed the record and completed a residual functional capacity assessment in December 2022.  Dr. Gutierrez diagnosed the claimant with severe disorders of the skeletal spine, severe essential hypertension, severe fibromyalgia, and severe hemolytic anemia.  He also found light exertion with similar sitting, standing, or walking, as well as frequent climbing, balancing, stooping, kneeling, crouching, and crawling limitations; but he recommended no manipulation limitations. He noted consistent allegations of pain and weakness, with confirming diagnoses and mild to moderate degenerative changes seen on imaging, as well as examination reports showing antalgic gaits, decreased range of motion in the right shoulder, hips, and right knee, but also clear auscultation, normal heart signs, normal strength, normal reflexes, normal sensation, intact fine/gross manipulation, the ability to drive, shop, and perform self-care and no need for an assistive device.

(*Id.*).  The ALJ acknowledged that Drs. Kettani, De la Torre, and Zuriekat's treatment notes and RFC forms were dated after Dr. Gutierrez's December 2022 opinion and "supported stricter manipulation limitations than originally thought (e.g., B15F-B25F; Hearing Testimony)." (*Id.*).  But even considering this later evidence, the ALJ concluded that Dr. Gutierrez's "opinions were generally supported by and consistent with the detailed longitudinal record, [and] the undersigned finds them persuasive overall.

Nevertheless, the record does not provide evidence of a policy compliant fibromyalgia diagnosis with tender point testing." (*Id.*).

Plaintiff challenges this: "Three treating sources independently assessed [Plaintiff] with almost identical limitations" and "[t]hese opinions were only inconsistent with the opinion of [Dr. Gutierrez], who was wholly reliant on a written record, which cannot measure the impact that the objective findings described by [him] had on [Plaintiff] in the same way that providers who have interacted with and observed her [can]." (Doc. 13 at 19). But this argument echoes the treating physician rule, which is no longer the driving force behind an ALJ's weighing of medical sources. Indeed, Plaintiff cites *Raper v. Commissioner of Social Security*, 89 F.4th 1261 (11th Cir. 2024), in which the Eleventh Circuit upheld the district court's affirmance of the agency's denial of a March 2015 disability application (Doc. 13 at 15-20). *Raper* applied the previous version of the regulations and found that the ALJ articulated good cause to discount the plaintiff's treating physician's opinion. *Id.* at 1265.

Instead, the ALJ here found that the functional limitations Drs. Kettani, De la Torre, and Zuriekat identified on their RFC forms were unsupported by the record, "including [their] own notes." (Tr. 120). Their opinions were "inconsistent with the detailed longitudinal record" and "unpersuasive overall." (*Id.*). "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" *if* substantial evidence supports the conclusion that the ALJ considered the claimant's condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Here, it does. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at

*4-5 (M.D. Fla. Aug. 6, 2021) (finding ALJ properly evaluated persuasiveness of doctor's opinion, even though ALJ did not use the words 'supportability' and 'consistency,' because ALJ addressed the medical records, cited the doctor's opinions, and found it opinion inconsistent with clinical notes), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).  In line with controlling regulations, the ALJ found: (1) Drs. Kettani, De la Torre, and Zuriekat did not support their assessments of Plaintiff's limitations with evidence culled from their respective observations and findings, and (2) the record did not support the limitations they assessed.  Plaintiff's third argument fails.

### D. Subjective Complaints

Finally, Plaintiff argues that the ALJ erred in assessing her subjective complaints of pain because she did not adequately explain how the evidence was inconsistent with Plaintiff's description of her symptoms.  The Commissioner responds that the ALJ articulated specific and adequate reasons for discounting Plaintiff's subjective complaints, and these reasons are supported by substantial evidence.  The Court agrees.

In determining whether a claimant is disabled, the ALJ must consider all symptoms, including pain, and the extent to which those symptoms are reasonably consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  Once a claimant establishes that his pain or other subjective symptoms are disabling, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Land v. Comm'r of Soc. Sec.*, 843 F.

App'x 153, 155 (11th Cir. 2021) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)).

The Eleventh Circuit has established a three-part "pain standard" for the Commissioner to apply in evaluating a claimant's subjective complaints. The standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). If an ALJ rejects a claimant's subjective testimony, she must articulate explicit and adequate reasons for this decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

Social Security Ruling 16-3p cautions that "subjective symptom evaluation is not an examination of an individual's character." *Id.* Adjudicators, as the regulations dictate, are to consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. *Id.* The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or

laboratory findings.  20 C.F.R. § 404.1529.  "Other evidence," again as the regulations define, includes evidence from medical sources, medical history, and statements about treatment the claimant has received.  *See* 20 C.F.R. § 404.1513.  Subjective complaint evaluations are the province of the ALJ.  *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Plaintiff testified that she lives with her two adult daughters (Tr. 30).  She drives short distances to doctor's appointments (Tr. 31).  She stopped working at Walmart because it was too strenuous for her (*Id.*).  She has pain in both knees, with a torn meniscus on her left side and arthritis in her right knee (Tr. 35-36).  Severe shoulder pain radiates to her jaw, preventing her from using a walker because she cannot put weight on her shoulder (Tr. 36).  Instead, she places folding chairs around her house to move between and lean on (*Id.*).  She avoids walking "at all times" and feels pain in her hip if she attempts to stand up for more than 15 minutes (Tr. 37).  Her daughters encourage her to walk the length of the driveway and back into the garage, which she testified she could do a few times before tiring (*Id.*).  She estimates she can sit for 20 minutes at a time (Tr. 38).  Her right knee is constantly swollen, and the only time she is pain-free is when she stays in bed all day (Tr. 40).  She takes pain medication, but it makes her dizzy.

The ALJ relied on boilerplate language in assessing Plaintiff's subjective complaints:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these

> symptoms are not entirely consistent with the medical evidence and other
> evidence in the record for the reasons explained in this decision.

(Tr. 110). This language directly addresses the Eleventh Circuit's standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, No. 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted*, 2013 WL 1694841 (Apr. 18, 2013). The Court finds it is.

In evaluating Plaintiff's subjective complaints, the ALJ explained that while Plaintiff reported pain in her neck, back, and both knees, her providers observed she could walk with a limp, stand, and sit independently (Tr. 111-20). For example, in February 2023, Dr. Kettani reported that Plaintiff had full range of motion in both her upper and lower extremities, and there was no evidence of decreased strength or muscle atrophy (Tr. 1111-13). Imaging showed no significant abnormalities beyond a meniscal tear in Plaintiff's left knee (*Id.*). She was treated conservatively with medications, referrals to physical therapy, and other tests she did not complete.

At this point, the Court reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Considering this standard, after

considering the entire record, the Court finds that substantial evidence supports the ALJ's evaluation of Plaintiff's allegations of subjective pain.

## V.    Conclusion

Accordingly, for the foregoing reasons, it is

RECOMMENDED:

1. The decision of the Commissioner be affirmed.

2. The Clerk be directed to enter final judgment for the Commissioner and close the case.

IT IS SO REPORTED in Tampa, Florida, on December 6, 2024.


SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.